UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

CLAUDIE PIERRE                                     :
On behalf of herself and as a representative of a class :
of similarly-situated individuals,                   :
                                             :
                     Plaintiff,              :
                                               :
-against-                                      :
                                             :
                                             :
JC PENNEY COMPANY, INC., STEFAN        :
KOWALSKY, "JOHN DOE #s 1-3" (being male   :
employees of JC PENNY COMPANY, INC. who    :
participated in the acts complained of herein),      :
"JANE DOE" (being a female employee of JC     :
PENNY COMPANY, INC. who participated in      :
the acts complained of herein,                 :
                                             :
                     Defendants          :

-------------------------------------------------------------------X

Case No. 03 CV 4782 (RTD)

AMENDED
CLASS ACTION
COMPLAINT

Demand for Jury Trial



Plaintiff, by and through her attorneys, AGBAYEWA, RAYMOND & ROY,

LLP and LAW OFFICES OF K.C. OKOLI, P.C., complaining of defendants,

alleges as follows:

## INTRODUCTION

1.     This action arises out of the racial profiling of Black and African American

shoppers at JC PENNEY COMPANY, INC. ("JC PENNEY")  stores in the City

of New York, and the resultant violation of the civil and constitutional rights of

said Black and African American shoppers.

2.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure on her own behalf and as representative of a class of persons

1

consisting of:  All Black or African Americans who shopped at JC PENNEY

stores in the City of New York who were subjected to racial profiling, unlawful

search and seizure, and other unlawful acts on the basis of their race or color,

and who assert the right to sue the defendants herein independently.

3.    Plaintiff brings this action individually and a class representative for permanent

injunctive relief and to recover damages against the defendants identified below

who participated in the conduct complained of.

## JURISDICTION AND VENUE

4.    This action is brought pursuant to the Fourth Amendment of the Constitution of

the United States and the Civil Rights Acts, 42 U.S.C. §1981, as amended, and

42 U.S.C. §1982.

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C.  §§1331 and

1343.

6.    The Court has supplemental jurisdiction over the state claims pleaded herein

pursuant to 28 U.S.C.  §1367(a).

7.    Venue is proper in the Eastern District of New York because a substantial part

of the events or omissions giving rise to the claims herein occurred with the

district.

## PARTIES

8.    Plaintiff Claudie Pierre ("PIERRE")  is a Black African-American female who,

at all times relevant to this action, resided in Queens County, New York.

2

9.    Defendant JC PENNEY  is a New York State corporation with its place of

business in the City of New York, and operates numerous retail stores within

New York.

10.   Defendant STEFAN KOWALSKY ("KOWALSKY")  was, at all times relevant

to this action, a manager at a JC PENNEY store located at 90-51 Queens

Boulevard, in Queens County, New York.

11.   Defendant JOHN DOES #s 1 - 3 are males who, at all times relevant to this

action, were employed as security guards by JC PENNEY at its store located at

90-51 Queens Boulevard, Queens County, New York.

12.   Defendant JANE DOE is a female who, at all times relevant to this action, was

employed as a security guard by JC PENNEY at its store located at 90-51

Queens Boulevard, Queens County, New York.

13.   At all times relevant to this action, the aforesaid individual defendants were all

acting within the scope and in the course of their employment with JC

PENNEY.


## CLASS ACTION ALLEGATIONS

14.   PIERRE brings this action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, on her own behalf and as representative of the following class of

individuals:

> All Black or African American shoppers who have been or are being
> unlawfully targeted for shoplifting at J C PENNEY stores located
> throughout New York City, falsely accused of shoplifting, subjected to
> unlawful search and seizure,  falsely imprisoned, harassed, or whose

3

personal property has been wrongfully confiscated or damaged by J C PENNEY security agents because of their race and/or color.

15      Plaintiff and the Class bring this action for injunctive relief, as well as compensatory and punitive damages, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

16.     The unlawful discriminatory and tortious conduct and violation of civil and constitutional rights described in this Complaint have occurred in JC PENNEY stores located throughout New York City.  The individual defendants and other employees of JC PENNEY were acting within the scope of their employment. The named Plaintiff herein is a member of the Class she seeks to represent.

17.     The Class includes more than 100 individuals and, therefore, the members of the Class are each so numerous that joinder is impracticable. There are questions of law and fact common to the Class including, but not limited to:

   a.      whether the acts of the defendants caused a deprivation of rights guaranteed by the United States Constitution under the Fourth Amendment;

   b.      whether the defendants deprived plaintiff and members of the Class rights recognized under 42 U.S.C. §§1981 and 1982;

   c.      whether the deprivation of rights was motivated by race or color of the plaintiff and the Class members;

   d.      whether the defendants denied plaintiff and other Class members the full and equal accommodations, advantages, facilities, and privileges of a place of public accommodation;

4

e.   whether such denial or harm done to the plaintiff and other Class members is motivated by race or color of the Class members;

f.   whether JC PENNEY has a policy, practice or custom which led to the deprivation of the aforementioned rights;

g.   whether JC PENNEY is guilty of negligent hiring, supervision or training of its security guards, including the individual defendants, which resulted in any deprivation or rights or harm to plaintiff and other Class members;

h.   whether any of the denials of rights to plaintiff and other Class members is violative of the common law and statutes of the State of New York.

18.   These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual class members.

19.   The claims of the named plaintiff are typical of the claims of the class she seeks to represent in that the named plaintiff and all members of the proposed class shopped at JC PENNEY stores located in the City of New York.

20.   The proposed class members seek damages as a result of injuries to themselves suffered as a result of the conduct of the defendants.  They also seek injunctive relief to prevent future injuries to themselves and to deter future similar conduct on the part of the defendants.

21.   The pursuit of damages and injunctive relief by the class representative for her injuries and losses will benefit the entire proposed class she seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of members of the class she represents.  The named plaintiff has retained counsel

5

competent and experienced in class action litigation and litigation involving
violation of civil and constitutional rights on the basis of race and color.
Accordingly, the interest of the class will be adequately protected and advanced.

22.    There is no conflict of interest between the named plaintiff and members of the
class she proposes to represent.  The interest of the named plaintiff are aligned
because the members of the class have an interest in securing their right to
compensatory and punitive damages and injunctive relief as a result of any
injuries caused by the defendants' conduct.

23.    Notice can be provided to the class members by published notice in a
newspapers circulating in New York City since the majority of the class
members are shoppers in New York City.

24.    Certification of the class is appropriate pursuant to Federal Rules of Civil
Procedure, 23(b)(3), because questions of law and fact common to the members
of the class predominate over any questions affecting only individual members.
The class action is superior to other available remedies for the fair and efficient
adjudication of this controversy.

25.    PIERRE  represents a class of African-American and/or Black shoppers who
have been  or are being targeted as shoplifters by security guards at JC
PENNEY  stores throughout New York City based upon their race and or color,
and then subjected to false accusations of shoplifting, wrongful detentions,
searches, false imprisonment, defamation, insults and harassment, all based on
their race and/or color.

6

26.     Defendant JC PENNEY and its employees and/or agents committed said acts intentionally and/or knowingly that there was no reasonable basis and/or probable cause for their acts as evidenced among other things by the release of PIERRE without contacting the New York City Police Department (NYPD) or otherwise bringing any criminal charges against her.

## FACTUAL BACKGROUND

### JC PENNEY's Pattern and Practice of Race-Based Discrimination

27.     Defendant JC PENNEY, has engaged in and is continuing to engage in a pattern and practice of unlawful conduct and violation of civil and constitutional rights, discriminatory and other tortious conduct targeted toward African-American and/or Black shoppers of JC PENNEY stores located throughout New York City.

28.     Among Defendants common discriminatory practices are: (1) targeting African-American, Black and other non-White shoppers for suspicion of shoplifting; (2) subjecting such shoppers to false accusations of shoplifting, unlawful search and seizure, false imprisonment, assault and battery, defamation, and intentional infliction of emotional distress; and (3) harassing African-Americans and Blacks because of their race and/or color.

29.     Defendant JC PENNEY is responsible for the hiring, training and supervision of all persons who manage and or work as security guards at JC PENNEY stores located throughout New York City and, in that capacity, the Defendant maintains operational policies and procedures, including security operations and is responsible for ensuring compliance with the policies, and is responsible for the

7

acts of said security personnel as occurred within the scope of employment and during the course of employment.

30.     Defendant JC PENNEY engages in a pattern and practice of discrimination against African-American, Black and other non-White shoppers on the basis of their race and or color. Specifically, store security guards commonly use racial profiling and targeting of African-American and or Black, as well as other non-White shoppers for suspicion of shoplifting, subjects those shoppers to false accusations of shoplifting, defamation, wrongful and unjustified detentions, searches, false imprisonment, and harassment on the basis of their race and or color.

31.     These and other common practices by Defendant JC PENNEY have been experienced by African-American and/or Black shoppers at JC PENNEY in the Northeast region, including New York City.

32.     These common practices by Defendant JC PENNEY denied PIERRE and other members of the Class (i) the right to make and enforce contracts on the same basis as white citizens, including the right to enjoy all benefits, privileges, terms and conditions of a contractual relationship; (ii) the full and equal benefits of all laws and proceedings for the security of persons and property as enjoyed by white citizens, in violation of 42 U.S.C. §1981.

33.     Defendant JC PENNEY's common practices have also deprived PIERRE and other members of the Class of their right to the equal enjoyment of all the benefits and privileges of a place of public accommodation commonly enjoyed by White race New York residents guaranteed by the New York State Human Rights Law,

8

as codified as the New York Executive Law, § 296 et. seq., the New York Civil

Rights Law  §40, and the New York City Human Rights Law, codified in the New

York City Administrative Code   §§8-101 et. seq.

34.    Defendant JC PENNEY's  common practices have subjected PIERRE and other

members of the Class to Defamation, false imprisonment, assault and battery,

conversion,  intentional infliction of emotional distress and/or negligent infliction

of emotional distress..

35.    Defendant JC PENNEY's  pattern and practice of discrimination, tortious and

otherwise unlawful conduct has severely harmed PIERRE and other members of

the Class.

36.    Defendant JC PENNEY has not taken any prompt and effective action to prevent,

deter or remedy the discriminatory practices identified herein.


**JC PENNEY's Unlawful Search and Seizure and  Race-Based Targeting of Plaintiff**

37.    PIERRE is a twenty four (24) year old young woman and student at Monroe College

who works at Terrence Cardinal Cook Health Care Center in New York City.

38.    PIERRE has never been arrested and has no criminal record.

39.    Prior to the civil and constitutional rights violations, discriminatory, humiliating and

harassing conduct described below, PIERRE was a loyal and long time customer of JC

PENNEY.

40.    On or about September 20,  2002, PIERRE entered JC PENNEY's store located at

90-51  Queens Boulevard, in the County of Queens, City and State of New York.

41.     PIERRE viewed some merchandise and left the store without purchasing any
        merchandise, and did not exit the store with any unpaid item.

42.     PIERRE exited JC PENNEY store and proceeded West on Queens Boulevard
        toward the New York City Subway Station.

43.     Upon said exit, and prior to entering the subway station, JOHN DOE 1, a White
        male plain clothes security guard at JC PENNEY, grabbed PIERRE by her
        shoulder, attracting the attention of passersby and onlookers, and publicly
        accused PIERRE of stealing merchandise from the afore- mentioned JC PENNEY
        store.   JOHN DOE #s2 through 4 arrived at the scene and joined JOHN DOE #1
        in detaining PIERRE.

44.     Having surrounded PIERRE and in the presence of the passersby and onlookers,
        JOHN DOE #s1-4 threatened to immediately send PIERRE to jail if PIERRE did
        not return to the store with them.  JANE DOE, a female security officer of
        Defendant JC PENNEY, continuously yelled at PIERRE, "You better return the
        merchandise you stole!"  Said Defendants' acts, actions and conduct further
        attracted more passers by, subjecting PIERRE  to ridicule, hatred and disgust.

45      PIERRE who was on her way home from school, was held against her will and
        forced by JOHN DOE #1-4 to accompany them to the afore-mentioned store of
        Defendant, JC PENNEY.  JOHN DOES #1-4 took PIERRE against her will to a
        detention area in a secluded part of the store out of the sight of other shoppers,
        where she was further detained and falsely and unjustifiably imprisoned for an
        unreasonable amount of time.  The detention area was a small window-less room.

46.     As soon as PIERRE got to the detention area, the security guards immediately
        began to insult, scream, and yell all sorts of profanities at PIERRE: the JOHN
        DOE defendants claimed that PIERRE had been under surveillance the minute
        she entered the store and that they, the security guards, had her on tape stealing
        merchandise from JC PENNEY store.

47.     When PIERRE protested her innocence, the security guards ordered her to sit
        down and empty her pockets. One of the JOHN DOES forcibly wrested
        PIERRE's handbag from her causing her to suffer bruises on her hand.  The
        JOHN DOES and JANE DOE took possession of PIERRE's  school bag and
        emptied the contents of it on the floor. Realizing that the bag did not contain any
        item belonging to JC PENNEY, one of the JOHN DOES continued to yell at
        PIERRE insisting that he saw her and knew that PIERRE stole from the store on a
        previous occasion.  They continued to threaten to send PIERRE to jail if she did
        not confess to them that she stole.

48.     While PIERRE was subjected to severe interrogation by one of the JOHN DOES,
        another JOHN DOE blurted out, "We know, we have your file here bitch from the
        last time you stole from the store and we told you never to come back here!"

49      As PIERRE continued to cry and protest her innocence, one JOHN DOE
        ordered her to shut up, and subjected her to a degrading full body pat-down
        search, inappropriately touching her buttocks, her breasts and her inner thigh.

50.     PIERRE was falsely imprisoned in JC PENNEY's detention area against her will
        for over two hours. During her detention, PIERRE saw only African-Americans,
        Black or non-White detainees or prisoners in the detention area.  PIERRE did

11

not see any White detainees or prisoners even though she saw White shoppers at the same JC PENNEY store.

51.     Specifically, PIERRE observed that there was an African-American female in the detention area who allegedly shoplifted from the store. During her detention, PIERRE witnessed the arrival of another African American female in handcuffs accused of stealing, and accompanied by security guards of Defendant JC PENNEY.

52.     During the entire period of her detention, PIERRE repeatedly protested her innocence of the accusation leveled against her, and requested to be released but defendants ignored her requests.

53.     During this period of unlawful detention, PIERRE was also ridiculed and subjected to vulgar profanities, and racial taunts such as "Motherfucker", "Fucking bitch", "Black bitch", and other demeaning words which PIERRE cannot now recall.

### J C PENNEY's  Attempt to Coerce a False Confession from Plaintiff

54.     When the defendants realized that PIERRE did not have any prior incidents of shoplifting or other criminal record, the JOHN DOE defendants attempted to conceal their false arrest of PIERRE by attempting to force her to sign documents, confessing to shoplifting and agreeing to be banned from returning to shop at J C PENNEY in the future.

55.     When PIERRE refused to falsely confess to a crime that she did not commit,

12

one of the JOHN DOE defendants became angry and hostile toward her, and grabbed the documents from her. JOHN DOE #4 then emerged from behind a wall and walked to PIERRE and attempted to intimidate her into signing the false confession. PIERRE, who had been crying all along, still refused to confess to a crime she did not commit and continued to proclaim her innocence.

56.   JOHN DOE #4   thereafter stood in front of PIERRE staring steadily at her in an attempt to intimidate her into confessing a crime she did not commit. PIERRE refused to falsely confess and one of the JOHN DOE defendants further humiliated her by  attempting to take her photograph while she was sitting on the bench. PIERRE pleaded against being photographed because she is innocent and defendants had no right to photograph her in that situation.

57.   During said detention, PIERRE repeatedly requested from the JOHN DOE defendants an opportunity to make a phone call to her mother to report her situation and whereabout, but said defendants declined this reasonable request. Subsequently, an individual appeared at the detention room, identified himself as Stefan Kowalsky, the store security manager, and apologized to PIERRE for her ordeals from arrest through detention and stated that PIERRE was being released. In tears, PIERRE informed said defendant KOWALSKY about her intention to file a complaint with the New York City Police Department.

58.   After being detained for approximately 3 hours, PIERRE was released when the store closed at about 9:00 P.M. on September 20, 2002, and prior to departing the store, PIERRE requested from KOWALSKY a copy of the incident report prepared by the JOHN DOE defendants. KOWALSKY declined PIERRE's

13

request, and instead, gave PIERRE his business card and said : "I will mail it to you". KOWALSKY has not mailed this incident report to PIERRE till this day.

59.     PIERRE exited the store in tears and emotionally traumatized by her ordeal at the hands of JC PENNEY and its security agents, PIERRE slumped on the street in front of said store for a half an hour and wept profusely. Thereafter, PIERRE had a telephone contact with the New York City Police Department and two officers from the 110 Precinct responded. PIERRE informed said officers about her ordeal at the hands of JC PENNEY and the individual defendants and the officers advised PIERRE to file a formal complaint at the 110 Precinct. Too traumatized that night to file a complaint, PIERRE filed a complaint at the precinct on September 23rd, 2002.

60.     As to said allegation of shoplifting at said store leading to the violation of PIERRE's rights, defendants did not file any complaint with the New York City Police Department and neither was any criminal charge brought against PIERRE for her alleged shoplifting.

61.     Since the occurrence of the events subject of this suit, defendants have failed and/or refused to offer a written apology to PIERRE for their unjustified conduct and physical intimidation that she suffered at the store during her arrest and detention in the evening of September 20, 2002.

62.     As a result of PIERRE's ordeal during arrest and detention by defendants, PIERRE has continuously experienced anxiety attacks upon a thought of entering departmental stores and is scared of entering such stores, fearing that

14

JC PENNEY has publicized and/or shared her photograph with other retailers, and as such, becoming a potential target of false accusation of shoplifting, that could result in being falsely imprisoned and degraded based on similar acts of racial profiling.

63. As a result of the incident subject of this suit, PIERRE has continuously suffered emotional trauma with serious negative impact on her personal and professional life.

64. The conduct of the defendants as stated in the preceding paragraphs subjected PIERRE to a Fourth Amendment violation of her right to be free from unlawful search and seizure and denied her, on basis of her race and color, the right to make and enforce contracts, including the right to enjoy all of the benefits, privileges, terms and conditions of a contractual relationship as is available to white citizens,  denied her the full and equal benefits off all laws and proceedings for the security of persons and property as enjoyed by white citizens, denied her the same right enjoyed by white citizens to hold property, and denied her the equal enjoyment of privileges,  advantages, facilities and accommodations of place of public accommodation afforded under federal, state and city law.

65. Through the actions described above, defendants acted intentionally, maliciously, and with willful, callous, wanton and reckless disregard for PIERRE's federally protected civil rights, as well as her rights as a citizen of New York State and City.  They have also subjected her to defamation, false imprisonment, assault and battery, intentional infliction of emotional distress,

15

which resulted from the and negligent hiring, training and supervision of the individual defendants by JC PENNEY.

66. As a proximate result of the actions of defendants, their agents and employees, as described above, PIERRE has suffered and is likely to continue to suffer irreparable harm and injury, including but not limited to economic loss, humiliation, embarrassment, physical and emotional distress, mental anguish, and a deprivation of her civil rights. For these injuries, PIERRE seeks compensatory damages.

67. Because defendants acted intentionally and maliciously with reckless disregard of PIERRE's federally protected rights, PIERRE also seeks punitive damages.

68. Upon information and belief, the security guards at JC PENNEY stores located throughout the city are continuing their discriminatory and humiliating treatment of African-American and Black shoppers.

## COUNT ONE
### (Violation of Fourth Amendment Rights)

69. Plaintiff realleges each and every allegation above set forth herein.

70. The detention and search of plaintiff by private security agents of JC PENNEY, without a warrant and without reasonable and probable cause, constitutes unreasonable search and seizure, in violation of rights guaranteed to plaintiff under the Fourth and Fourteenth Amendments to the Constitution of the United States.

71. As a direct and proximate result of the defendants' aforesaid acts and conduct, plaintiff has suffered loss and damage.

16

## COUNT TWO
### (Violation of 42 U.S.C. Section 1981)

72.     PIERRE realleges each and every allegation above as set forth herein.

73..    By the actions described above, Defendants has denied PIERRE and

members of the Class the same right to make and enforce contracts, including

the enjoyment of all benefits , privileges, terms, and conditions of a contractual

relationship  as is enjoyed by white citizens of the United States, in violation of

42 U.S.C.  §1981.  As a result of Defendants conduct, PIERRE and members

of the Class  suffered and continue to suffer loss and damage.

## COUNT THREE
### (Violation of 42 U.S.C. Section 1981)

74.     PIERRE realleges each and every allegation above as set forth herein.

75..    By the actions described above, Defendants have denied PIERRE and

members of the Class the full and equal benefit of all laws and proceedings for

the security of persons and property as is enjoyed by white citizens, in violation

of  42 U.S.C  §1981.

76.     As a result of Defendants' conduct, PIERRE and members of the Class

have suffered and continue to suffer loss and damage.

## COUNT FOUR
### (Violation of 42 U.S.C. Section 1982)

77.     PIERRE realleges each and every allegation above as set forth herein.

17

78.   By the actions described above, Defendant has denied PIERRE and

members of the Class the same right to hold personal property as enjoyed by

white citizens of the United States, in violation of 42 U.S.C. §1982.

79.   As a result Defendants' conduct, PIERRE and members of the Class

have suffered and continue to suffer loss and damage.


## COUNT FIVE
### (Violation of the New York State Human Rights Law)

80.   PIERRE realleges each and every allegation above as set forth herein.

81.   JC PENNEY is a retail store falling within the definition of a place of

public accommodation, pursuant to the New York State Human Rights Law,

§292 (9).

82.   By the actions described above, Defendants have denied PIERRE and

members of the Class the full and equal accommodations advantages facilities,

and privilege of a place of public accommodation on the basis of their race

and/or color, in violation of the New York State Human Rights Law, §296

(2)(a).

83.   As a result of Defendants' conduct, PIERRE and members of the Class

have suffered and continue to suffer loss and damage.


## COUNT SIX
### (Violation of the New York City Administrative Code)

84.   PIERRE realleges each and every allegation above as set forth herein.

85.   JC PENNEY is a retail store falling within the definition of a place of

public accommodation, pursuant to the New York City Human Rights Law, § 8-102(9).

86.     By the actions described above, Defendants have denied PIERRE and members of the Class the full and equal accommodation, advantages, facilities, and privileges of a place of public accommodation on the basis of their race and/or color, in  violation of the New York City Human Rights Law,  §8-107(4).

87.     Prior to the commencement of this action, a copy of this Complaint was served on the city commission on human rights and corporation counsel, pursuant to New York City Administrative Code,  502(c).

88.     As a result of Defendant  conduct, PIERRE and members of the Class have suffered and continue to suffer injuries and damages.


## COUNT SEVEN
### (Defamation Per Se)

89.     PIERRE realleges each and every allegation above as set forth herein.

90.     By openly accusing PIERRE of shoplifting or theft fro JC PENNEY, defendants falsely published of and concerning plaintiff, to third party bystanders and the public at large, that PIERRE had committed a crime.

91.     Said false accusation by the defendants is defamatory per se and/or maligns the plaintiff's honesty, trustworthiness, dependability or professional or business affiliations.

92.     As a result of the defendants' conduct, PIERRE has suffered and continues to suffer loss and damage..

19

## COUNT EIGHT
### (False Imprisonment)

93.     PIERRE realleges each and every allegation above as set forth herein.

94.     Defendants and their agents had no reasonable or probable cause to believe that PIERRE and other members of the Class had shoplifted merchandise, returned stolen merchandise or engaged in any other kind of criminal conduct at JC PENNEY prior to the violation of their rights.

95.     There is no legal justification for Defendants' unlawful detention of PIERRE and other members of the Class in a confined space, and their refusal to let plaintiffs leave.

96.     Defendants physically restrained PIERRE and other members of the Class for long periods of time without their consent and against their will.

97.     As a result of Defendants' conduct, PIERRE and members of the Class have suffered suffer loss and damage.


## COUNT NINE
### (Assault and Battery)

98.     PIERRE realleges each and every allegation above as set forth herein.

99.     By their actions, Defendants intentionally placed PIERRE and members of the Class in fear of imminent and offensive bodily contact and/or wrongfully subjected them to offensive physical contact without their consent.

100.    As a result of Defendants' conduct, PIERRE and members of the Class have suffered loss and damage.

## COUNT TEN
### (Intentional Infliction of Emotional Distress)

101.    PIERRE realleges each and every allegation above as set forth herein.

102.    Defendants' actions toward PIERRE and other members of the Class
        constituted extreme and outrageous conduct.

103.    Defendants wrongfully detained PIERRE and other members of the Class and
        subjected them to verbal abuse, humiliation and physical intimidation  in order
        to cause, or in disregard of a substantial probability of causing, them severe
        emotional distress.

104.    As a result of Defendants' conduct, PIERRE and members of the Class have
        suffered and continue to suffer loss and damage.

## COUNT ELEVEN
### (Conversion)

105.    PIERRE realleges each and every allegation above as set forth herein.

106.    PIERRE and other members of the Class owned and had a legal right to
        possess the property wrongfully confiscated by security guards at J C PENNEY

107.    Defendants dispossessed PIERRE and/or other members of the Class of
        their property without their consent and subsequently denied them the use of
        their  property. Defendant has failed to return such property to PIERRE and
        other members of the Class.

108.    As a result of Defendants' conduct, PIERRE and member of the Class have
        suffered and continue to suffer loss and damage.

21

## COUNT TWELVE

### (Negligent Hiring, Training and Supervision)

109.    PIERRE realleges each and every allegation above as set forth herein.

110.    In hiring, training and supervising security personnel, Defendant has a duty to prevent such personnel from engaging in discriminatory, tortious and/or otherwise unlawful conduct.

111.    Defendant JC PENNEY has negligently and/or recklessly failed to satisfy its duty of care to its customers in hiring, supervising, and retaining personnel that have engaged or continue to engage in a pattern and practice that is discriminatory, tortious and/or otherwise unlawful conduct.

112.    Defendants knew or should have known that the security guards at JC PENNEY have been engaging in racial profiling and subjected African-Americans and Blacks  to defamation, wrongful detention, falsely  imprisonment, and/or harassment, verbal abuse, insults, humiliation, and physical intimidation based on their race or color.

113.    As a result of Defendants' conduct, PIERRE and members of the Class have suffered and continue to suffer loss and damage.

114.    Plaintiffs demand a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court grant them relief as follows:

(a)     Certify this case as a class action under Rule 23;

22

(b)    Enter a declaratory judgment finding that the actions of Defendants alleged in this complaint violate the Fourth Amendment, 42 U.S.C. §§1981 and 1982, the New York State Human Rights Law, §296, 2(a), and the New York City Administrative Code, 8-107(4);

(c)    Enter a permanent injunction barring defendants from engaging in the discriminatory conduct alleged in this complaint;

(d)    Enter an Order and Judgment directing that Defendants take all affirmative steps necessary to remedy the effects of the discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

(e)    Award compensatory damages in an amount that would fully compensate PIERRE and other Class members, plus prejudgment interest, for the economic loss, humiliation, embarrassment, physical injury, mental and emotional distress, in an amount to be determined at trial but no less than $50 million;

(f)    Award punitive damages to Ms. Pierre and other Class members in an amount that would punish Defendants for the willful, wanton, and reckless misconduct and violations of civil and constitutional rights alleged in this complaint, and that would effectively deter Defendant from future discriminatory behavior in an amount to be determined at trial but no less than $100 million;

(g)    Award PIERRE and other Class members their reasonable attorneys fees, costs and disbursements; and

(h)   Further or other relief deemed just and equitable by the Court.


Dated:   New York, New York
         September 26, 2003




                            Respectfully Submitted,

                            **AGBAYEWA, RAYMOND & ROY, LLP**
                            67 Wall Street
                            Suite 2211
                            New York, New York 10005
                            (212) 859-3478

                            By: _____
                            Emmanuel Roy, Esq. (ER 1756)

                            **LAW OFFICES OF K.C. OKOLI, P.C.**
                            330 Seventh Avenue
                            15th Floor
                            New York, New York 10001
                            (212)564-8152

                            By: K.C. Okoli (KO7222)

                            **Attorneys for Plaintiff**

24